# IN GENERAL TERM, 1874.

---

ADAM BAUER *v.* JOHN B. STUMPH AND HERMAN BISHBINGHOFF, Appellants.

SALE—
CONVERSION.

A purchased from B three casks of wine, but it being of an inferior quality, and not such as represented by B, A refused to receive it, and so notified B. Finally A took the wine from the railroad station, and stored it in his cellar separate from his other stock, subject to B's order, and again notified B that the wine was there subject to his order,

*Held:* That by B's acquiescence in A's refusal to receive the wine, and a subsequent demand therefor by B, left the right of possession in him, and a title to the property until conversion.

A conversion by one partner, in the ordinary course of business, and for the benefit of the firm, of property under, and subject to their joint control or custody, renders both liable for the proceeds, regardless of the fact that any other member was ignorant of such conversion.

*D. K. Elliott,* for appellants.

*Klingensmith,* for appellee.

NEWCOMB, J.—This was a suit against the appellants and Herman Rickoff and wife for the alleged tortious conversion of three casks of wine, the property of the plaintiff.

In the year 1866, one Anselm Frank was a wholesale liquor dealer in the city of Indianapolis, and ordered the wine in controversy from the plaintiff, who was a dealer in wines, in Sandusky, Ohio.

On the arrival of the wine, Frank wrote to Bauer, notifying him that he would not accept it on account of its inferior quality.

Several letters passed between the parties, one of which is not in the bill of exceptions, though it was given in evidence. The result was that Frank took the wine from the railroad depot, and stored it in his cellar, subject to the order of Bauer.

On February 5th, Frank wrote to Bauer, offering to take and pay for the wine at a reduced price. To this letter no reply was made. In August, 1867, Frank died, the wine in its original casks still being in his cellar. On December 6, 1867, Bauer addressed a letter to Frank, which was not in evidence. This letter was replied to by the defendant, Stumph, as the friend and adviser of Mrs. Frank, the widow.

After advising Bauer of Frank's death, the writer says: " Upon his death bed he had me called to him, and made me acquainted with his books and business, to enable me to give his wife the needed assistance to close out the busi-

ness, to collect outstanding accounts and notes, and pay his debts, for which purpose he had appointed me last spring, in his last will. Among the debts he pointed out your account, and said that it was unjust, that the wine was not of the quality you had by letter assured him; that he had at first refused to receive it, and that the railroad company had placed the wine in store, and only at your request to do the best with it, he had at last received the same, and that he owed you the sum of $261.25, as an entry on the book made by Mr. Frank himself shows. This sum is at your disposal. Should this be satisfactory to you, you can sign enclosed receipt, and collect by express."

If a reply to this letter was sent, it is not in evidence.

The defendant, Bishbinghoff, had long been a clerk of Frank, and a few weeks after the death of the latter, he and his co-defendant, Stumph, purchased of Frank's widow the stock in trade of the deceased. This wine was then in the cellar where Frank had placed it, but it was not included in the invoice or sale, but it passed into the possession of the purchasers with the building, and stock in trade. Afterward, and during the partnership of Stumph & Bishbinghoff, the wine disappeared.

Frank's widow married Herman Rickoff, and they were made defendants with the appellants.

The cause was tried at Special Term by the Court, a jury being waived. There was a finding for the defendants Rickoff, but against Stumph & Bishbinghoff for $170, less than half the price at which the wine was shipped to Frank. A motion for a new trial was overruled.

The supposed errors presented by the appellants are :

1. That a certain entry in Frank's books was admitted in evidence over their objection. The substance of the entry was a statement of the quantity of wine received from Bauer, with a memorandum, that it was not according to contract, and therefore would not be posted without an understanding.

The bill of exceptions states that this was admitted to prove the value of the wine. It was not admissible for that purpose, but as the value was proved by other unobjectionable evidence, and as the finding shows that the value, as stated in this entry, was not regarded by the Court, no injury was done to appellants by its admission.

2. It is next urged that the sale to Frank was complete when the wine was shipped by plaintiff at Sandusky; that the right of property therein then passed to Frank, and that the plaintiff's cause of action is against Frank's estate, if he has any.

It is not necessary to inquire what Bauer's legal rights as against Frank were, if he had chosen to assert them. The proof is that Frank refused to accept the wine, unless Bauer would consent to a reduction in price, which the latter never consented to do. From the time it came to his possession to the day of his death, Frank kept these casks of wine separate from his own stock, and they passed into the custody of the appellants as the property of Bauer. Bishbinghoff, in his testimony, states that when he and Stumph purchased the stock left by Frank, this wine was not invoiced, for the reason that they did not consider that it belonged to Frank's estate, " but to Mr. Bauer, of Ohio," "and we passed it," he says, " and left it in the cellar."

Before suit, the plaintiff demanded the wine of the defendants.

We think these facts justify the finding that the plaintiff acquiesced in Frank's refusal to receive the wine, and that it remained his property until disposed of by the appellants.

3. It is next claimed that while the wine remained in the cellar of these defendants they were mere gratuitous bailees, and not liable without proof of an actual conversion by them. Unfortunately for this proposition, there is such proof. Bishbinghoff testified on this point as follows: "The wine could not have got out of the cellar without my know-

ing it; and after we were in business a while it slipped my mind that the wine was Mr. Bauer's, and not thinking that there was any wine there that did not belong to us, it was used in the firm of Stumph & Bishbinghoff." The evidence does not show that Stumph knew of the conversion of the wine, but the act being done in the ordinary course of the partnership business, and for the benefit of the firm, both are liable. *Story on Partnership*, §§ 166, 168.

4. The next point made by appellant's counsel is, that plaintiff parted with his title and possession in 1866 ; that his cause of action then accrued, and that the finding should have been for the defendants on their answer of the statute of limitations. This conclusion would follow if the premises were sound; but, as we have seen, the title was in the plaintiff until the conversion by the defendants, which was long after 1866, and the right of possession was in him whenever he chose to exercise it.

6. Lastly, it is urged that the wine was of no value, and therefore the damages found were excessive. All the defendants, except Stumph, swore that it was worthless, but the plaintiff testified that it was good, and worth $1.50 per gallon, when shipped to Frank. And it. so far improved in quality after going into possession of the defendants, that they unconsciously sold it for good wine ; and it does not appear that a single customer made complaint to them that it was not good.

The evidence as to value being contradictory, it was for the judge trying the cause to determine the weight, and credibility due to each witness, and his conclusions on that point cannot be reviewed here. We may remark, however, that we think, if he erred at all, it was in not giving larger damages.

The judgment at Special Term is affirmed, at the cost of the appellants.